# United States Court of Appeals
# For The Seventh Circuit

| | | |
|---|---|---|
| **Johannes T. Martin,** | ) | |
| | ) | Case No. 17-2043 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **Wendy's International, Inc., and** | ) | |
| **Guinness World Records Limited,** | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## APPELLANT'S BRIEF

U.S.C.A. — 7th Circuit
RECEIVED
JUN 21 2017 SOP
GINO J. AGNELLO
CLERK

# TABLE OF CONTENTS

TABLE OF AUTHORITIES....................I,II

JURISDICTIONAL STATEMENT....................1

STATEMENT OF ISSUES....................1

STATEMENT OF THE CASE....................2

THE COURSE OF THE PROCEEDINGS....................3

SUMMARY OF ARGUMENT....................6

ARGUMENT....................7

THE IL RIGHT OF PUBLICITY ACT....................8

THE STATUTE OF LIMITATIONS OF THE IL RIGHT OF PUBLICITY ACT....................14

FRAUDULENT CONCEALMENT....................17

THE LANHAM ACT....................20

FALSE ENDORSEMENT UNDER THE LANHAM ACT....................21

FALSE ADVERTISING UNDER THE LANHAM ACT....................23

STANDING UNDER THE FALSE ADVERTISING ARM OF THE LANHAM ACT....................25

THE DEFENDANTS' ACTIONS ARE SANCTIONABLE UNDER FRCP RULE 11(b)....................28

CONCLUSION AND RELIEF REQUESTED....................30

## TABLE OF AUTHORITIES

**Cases:**

Abdul Jabar v. General Motors, 75 F. 3d 1391 (9th Cir. 1996)....22

AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979)....21,22

Berry v. Ford Models, Inc., 525 F. App'x 451 (7th Cir. 2013)....17

Blair v. Nevada Landing Partnership, 369 Ill. App. 3d 318 (2006)....16,17

Carson v. Here's Johnny Portable Toilets Inc., 698 F.2d 831 (1983)....7

Henley v. Dillard Department Stores, 46 F. Supp. 2d 587 (N.D. Tex. 1999)....7

Jordan v. Jewel Food Stores, Inc. 743 F.3d 509 (7th Cir. 2014)....12,13,19,22

Jordan v. Dominick's Finer Foods, LLC, No. 1:2010-cv-00407 (N.D. Ill. 2015)....13

Lexmark v. Static Control Components, Inc., 134 S. Ct. 1337 (2014)....3,26,27

Motschenbacher v. R.J. Reynolds Tobacco Co., 498 F.2d 821 (9th Cir. 1974)....7

Palmer v. Schonhorn Enterprises, Inc., 96 N.J. Super. 72 (1967) 232 A.2d 458....12

Toney v. L'Oreal USA, Inc., No. 02 C 3002 (N.D. Ill. 2002)....14,15,17

White v. Samsung America, Inc. 971 F .2d 1395 (1992)....7,21,22

**Statutes:**

735 ILCS 5/13-205....14

765 ILCS 1075/5....3,9

765 ILCS 1075/10....8

765 ILCS 1075/15....14

765 ILCS 1075/30....3,5,9,10,11,13

765 ILCS 1075/35....4,11,12

765 ILCS 1075/40....13

765 ILCS 1075/45....13

765 ILCS 1075/60.....8,15

**U.S. Code:**

15 U.S.C. § 1125 (The Lanham Act).....5,6,20-26

**RULES:**

FRCP RULE 11(b).....4,28,29

**ARTICLES:**

9 Key Questions About Lanham Act False Advertising Suits
ALM Corporate Council.....24

Fraudulent Concealment in Federal Court: Toward a more Disparate standard?
Fraudulent Concealment in Federal Court – UC Hastings.....19

J. Thomas McCarthy, Melville B. Nimmer and the Right of Publicity: A Tribute,
34 U.C.L.A.L. Rec. 1703, 1704 (1987).....5

Prosser, Privacy, 48 Calif. L. Rev. 383, 389 (1960).....7

## JURISDICTIONAL STATEMENT

Pursuant to Seventh Circuit Rule 3(c), Appellant Johannes T. Martin, respectfully submits the following:

A. Subject matter jurisdiction was properly exercised by the District Court under 28 U.S.C. § 1331. This action arose under Sec. 43(a) of the Lanham Act (15 U.S.C. § 1125). Diversity jurisdiction was properly exercised by the District Court under 28 U.S.C. § 1332. This action arose under the IL Right of Publicity Act (765 ILCS 1075/). I am a citizen of the State of Illinois. I have maintained my principal residence at my present location in the State of Illinois for the past 25 years. The Defendants are corporations. Wendy's International, Inc., is a citizen of Ohio. Wendy's International Inc., was incorporated in the State of Ohio in 1969 and also maintains its principal place of business (corporate nerve center) in the State of Ohio. Guinness World Records Limited is a citizen of England. Guinness World Records Limited was incorporated in England in 1954 and also maintains its principal place of business (corporate nerve center) in England. I seek damages in excess of $75,000.

B. The Court of Appeals has jurisdiction in this matter under 28 U.S.C. § 1291.

C. On 4/28/2017, a final order was entered granting Defendant's Motion to Dismiss.
There are not any other claims remaining before the District Court.
There are not any other motions or orders that have since been entered.

D. There are not prior related appellate proceedings on this matter.

E. There is not prior litigation in the district court that is not being appealed.

F. The notice of appeal was filed on May 17, 2017.

## STATEMENT OF THE ISSUES

(i) Whether the Defendants' use of this plaintiff's name and record constitutes a violation of this plaintiff's rights under the IL Right of Publicity Act.

(ii) Whether this plaintiff's claim under the IL Right of Publicity Act is time barred.

(iii) Whether the Defendants' use of this plaintiff's name and record in connection with the Defendants' logos and products constitutes a violation of this plaintiff's rights under the false endorsement arm of the Lanham Act.

(iv) Whether the Defendants misrepresented the "nature, characteristics, qualities, or geographic origin" of their "goods" in violation of this plaintiff's rights under the false advertising arm of the Lanham Act.

## STATEMENT OF THE CASE

My name is Ted Martin. I hold the record for most consecutive kicks of a footbag. (a.k.a. Hacky Sack) This world record of 63,326 consecutive kicks was established on June 14, 1997 and took over eight hours and fifty minutes to achieve. (Exhibit G of Complaint)

In 1972, John Stalberger and the late Mike Marshall invented a new kicking game. They called this new game Footbag and would go on to market the game under the brand name Hacky Sack. The objective of this new game was simple; how many consecutive kicks could you achieve without a miss?

The term Footbag and the term Hacky Sack are completely interchangeable. Since the Defendants use the term Footbag in their promotion, this plaintiff will use the term Footbag from this point forward.

The term Footbag is like the term Football in that the term can refer to either the game or the object used to play the game. I hold the record for most consecutive kicks of a footbag. My particular record is commonly referred to as "the Footbag World Record".

The reason why my particular record is commonly referred to as "the Footbag World Record" is because the record for most consecutive kicks is the record for the game of Footbag; not because my record is one of many records using a footbag.

When you Google "the Footbag World Record" (Exhibit B of ANSWER TO DEFENDANTS' JOINT NOTICE OF SUPPLIMENTAL AUTHORITY) you are linked to a page on the worldfootbag.com website which states right in the heading,

"Oct 23, 2013 – Record Holder: Ted Martin / Des Plaines, Illinois, USA Category: Open Singles Footbag Consecutive. Date of Record: June 14, 1997."

The Defendants, Wendy's International, Inc. and Guinness World Records Limited, held a promotion in the U.S. and Canada from August 12th to September 22nd 2013. In this promotion, the Defendants printed GUINNESS WORLD RECORDS directly on their promotional footbag. (Exhibit F of Complaint)

The Defendants' footbag was mounted on an in store display (Exhibit B of Complaint), pictured on the Wendy's Kids' Meal bag (Exhibit C of Complaint), and pictured in an internet advertisement Guinness World Records published on August 20, 2013. (Exhibit A of Complaint)

The consumer was given the choice of one of six toys with every Wendy's Kids' Meal purchase. The toys were described as "record-breaking" on both sides of the Kids' Meal bag (Exhibit C of Complaint) and as "Guinness World Records record-breaking toys" in the internet ad. (Exhibit A of Complaint)

When chosen, the footbag would be included in the Wendy's Kids' Meal bag and come sealed in a separate plastic bag with the Defendants' logos printed on the plastic bag. (Exhibit D of Complaint)

Sealed inside the plastic bag with the footbag was a card. The Defendant's logos were prominently displayed on the card. (Exhibit E of Complaint) The card asked, "CAN YOU BREAK THE RECORD?" Under the heading of "INSTRUCTIONS" the card said,

"How many times in a row can you kick this footbag without hitting the ground? Back in 1997, Ted Martin made his world record of 63,326 kicks in a little less than nine hours! Practice makes perfect, so first try flicking the footbag from one foot to the other or to your knee."

## THE COURSE OF THE PROCEEDINGS

The above facts clearly show that this plaintiff was positively identified by name and achievement in the Defendants' promotion. The above facts also show that my identity was used in direct connection with the Defendants' logos and products.

The IL Right of Publicity Act expressly prohibits any use of an individual's "identity" for commercial purposes without having obtained previous written consent. (765 ILCS 1075/30)

The IL Right of Publicity Act's definition of "identity" specifically includes "name". (765 ILCS 1075/5)

Before I even filed a complaint, the Defendants engaged in a concerted effort to deceive this plaintiff into believing that the Defendants were permitted to use my name and record in their promotion. (Exhibits H, I, & J of ANSWER TO DEFENDANTS' MOTION TO DISMISS)

This plaintiff spent a considerable of time investigating the Defendants' claims and found them to be completely unsupportable. The Defendants' claims were rejected by the IL Right of Publicity Act itself and by the precedence established in numerous previously decided cases.

I filed a complaint against the Defendants on August 11, 2015. The Defendants asserted that my IRPA claim was time barred and then engaged in a concerted effort to deceive the Court into believing that the Defendants were permitted to use my name and record in their promotion.

The Defendants' JOINT MOTION TO DISMISS contained a plethora of mischaracterizations and false representations backed up only by irrelevant and/or out of context citations.

The Defendants even went so far as to change the entire meaning of the Supreme Court decision in *Lexmark v. Static Control Components, Inc.* 134 S. Ct. 1377, 1380 (2014) by changing the prefix of an actual quote. (page #5 of the Defendants' JOINT MOTION TO DISMISS)

The Defendants' mischaracterizations and false representations deceived the Court into believing that my claim was time barred and that the Defendants were permitted to use my name and record in their promotion. The Court dismissed my complaint without prejudice.

The Court's judgment was obtained by extrinsic fraud. The Defendants brazenly violated all four signing requirements under FRCP Rule 11(b). It is not possible that any lawyer "after an inquiry reasonable under the circumstances" could possibly believe that their representations were in any way truthful. The Defendants mischaracterized and misrepresented every definition and legal standard applicable to the case. The Court was completely confused as to the applicability of the laws invoked in this case.

I filed an AMENDED COMPLAINT attempting to explain how the Defendants had misled the Court.

In an effort to keep the Court confused, the Defendants filed a JOINT MOTION TO DISMISS AMENDED COMPLAINT. The Defendants continued to use the same mischaracterizations and unsupportable false representations and added a few other mischaracterizations and unsupportable false representations into the mix as well.

In RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT AND MOTION FOR SUMMRY JUDGEMENT, this plaintiff specifically stated how the Court was being misled using lengthy quotes from cases decided by the United States Court of Appeals, Seventh Circuit, the United States Court of Appeals, Ninth Circuit and the United States Supreme Court.

In JOINT REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT, the Defendants basically doubled down on their previous mischaracterizations and unsupportable false representations.

After all of this, this plaintiff filled a NOTICE OF SUPPLEMENTAL AUTHORITY on August 29, 2016 to cite a case that directly rejected the Defendants' argument that my case should be dismissed because the consumer did not see my name and record until after purchase.

In spite of the overwhelming evidence against the Defendants, the Court granted the Defendants' MOTION TO DISMISS AMENDED COMPLAINT with prejudice on April 28, 2017.

In a new opinion, the Court indicated on page #8 of the MEMORANDUM OPINION AND ORDER that the Court agreed with the Defendants that the use of my name and record is exempted under Sec. 35(b)(3) of the IL Right of Publicity Act. The Court reasoned that the Defendants were merely identifying this plaintiff as "the performer in a particular performance".

On page #5 of RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT AND MOTION FOR SUMMARY JUDGEMENT, this plaintiff stated, "I did not perform at any time in the Defendants' promotion."

Under Sec. 35(b)(3), the IL Right of Publicity Act does not apply to the use of an individual's name in truthfully identifying the person as "the performer in a particular performance". The Defendants' crabbed self-serving interpretation that a "particular performance" means "any performance" brazenly distorts the meaning of a "**particular performance**".

If the Court's confusion was limited to just the above portion of this case; I would have filed a motion to reconsider. However, the Court indicates in the MEMORANDUM OPINION AND ORDER that the Court fundamentally does not understand right of publicity law. The Court states on page #8-9,

"Plaintiff does not challenge Guinness's right to list his record in its book, and it would be nonsensical to hold that the law prohibits Guinness from reciting that bare fact in a promotional item but permits it to include the fact in the book it sells. Plaintiff fails to state a claim for violation of his right of publicity under IRPA."

This plaintiff has not failed to state a claim. The Court fails to understand the applicable law because of the numerous false representations made to the Court by the Defendants.

The right of publicity has been described as the "inherent right of every human being to control the commercial use of his or her identity." *J. Thomas McCarthy, Melville B. Nimmer and the Right of Publicity: A Tribute*, 34 U.C.L.A.L. Rev. 1703, 1704 (1987) It is the **"commercial use"** of my "identity" that the law protects.

What the Court refers to as "nonsensical" is exactly what the law protects against. Guinness can list my name and record in the Guinness Book of World Records because it is not considered commercial speech even though the book itself is for sale. The IL Right of Publicity Act prohibits anyone, including Guinness, from using my name and/or record for commercial purposes without having obtained my previous written consent. (765 ILCS 1075/30)

In the MEMORANDUM OPINION AND ORDER, the Court also indicates that the Court fundamentally does not understand the Lanham Act either. The Court sates on page #10,

"Regardless of plaintiff's anecdotal account of what his business associates in Montreal might think, the Court remains unconvinced that plaintiff has plausibly alleged that ordinary consumers are likely to believe, based only on the fact that defendants mentioned plaintiff's record in the course of their promotional distribution of free footbags, that plaintiff endorsed the footbags. It is clear in the context of the promotion that mentioning plaintiff's record on the instruction card served only to offer a sample of the sort of world records Guinness publishes---and plaintiff does not claim that Guinness does not have the right to publish the record in its books. Plaintiff insists that merely mentioning him in their promotion, defendants implied that he endorses the free footbags they were distributing, but the promotion makes no explicit or implicit connection between plaintiff and those particular footbags. Indeed, it makes no meaningful representations at all about the quality of the footbags; the promotion merely represents that footbags can be used to set records."

Sec 43(a)(1)(A) is the false endorsement arm of the Lanham Act. This section prohibits actions which are likely to cause confusion as to the "affiliation, connection, or association" of a defendant with a plaintiff or as to the "origin, sponsorship, or approval" of the defendant's "goods" by a plaintiff.

In this case, the Defendants used my name and record in connection with the Defendants' logos which is likely to cause confusion as to the "affiliation, connection, or association" of the Defendants with this plaintiff. The Defendants also used my name and record in connection with the Defendants' "goods" which is likely to cause confusion as to the "origin, sponsorship, or approval" of the Defendants' "goods" by this plaintiff.

Sec. 43(a)(1)(B) is the false advertising arm of the Lanham Act. This section prohibits actions which misrepresent the "nature, characteristics, qualities, or geographic origin" of a defendant's "goods".

In this case, the Defendants described their footbag as "record-breaking" and suggested equivalency to the footbag used to set the world record of 63,326 consecutive kicks. The Defendants' actions clearly misrepresent the nature, characteristics, and qualities of the Defendants' "goods".

## SUMMARY OF ARGUMENT

To begin with, placing Guinness World Records on a footbag is in essence just another way of saying "the Footbag World Record". Footbag + Guinness World Records = Footbag World Record.

I contend that placing Guinness World Records on a footbag, in and of itself, violates my rights under the IL Right of Publicity Act.

I contend that using my name and record in connection with the Defendants' products violates my rights under the IL Right of Publicity Act.

I contend that using my name and record in connection with the Defendants' logos violates my rights under the IL Right of Publicity Act.

The card which comes sealed in the same plastic bag with the Defendants' footbag prominently features the Defendants' logos on the card as well as on the plastic bag. The card states,

"How many times in a row can you kick this footbag without hitting the ground? Back in 1997, Ted Martin made his world record of 63,326 kicks in a little less than nine hours! Practice makes perfect, so first try flicking the footbag from one foot to the other or to your knee."

**While directly addressing the consumer**, the Defendants say **"this footbag"** and directly connect the Defendants' promotional footbag to this plaintiff and this plaintiff's 63,326 kick record.

I contend that using my name and record in connection with the Defendants' logos and products violates my rights under the false endorsement arm of the Lanham Act.

The Defendants refer to their toys, including the footbag, as "record-breaking" on both sides of the Wendy's Kids' Meal bag and as "Guinness World Records record-breaking toys" in the internet ad.

I am the manufacturer of the actual "record-breaking" footbag used to set the 63,326 kick world record.

As the manufacturer, I contend that the Defendants' description of their footbag as "record-breaking" and suggesting that their footbag is equivalent to the footbag used to set the 63,326 kick world record is a violation of my rights under the false advertising arm of the Lanham Act.

**ARGUMENT**

The right of publicity was originally part of the right of privacy under common law. Professor Dean Prosser wrote an influential article in 1960 that delineated four distinct types of the right of privacy: (1) intrusion upon one's seclusion or solitude, (2) public disclosure of embarrassing private facts, (3) publicity which places one in a false light, and (4) appropriation of one's name or likeness for the defendant's advantage. *Prosser, Privacy*, 48 Calif. L. Rev. 383, 389 (1960) The first three types continued to be referred to as the right of privacy. (The right to be let alone) The fourth and last type came to be known as the right of publicity. However, the courts did not hold that the right of publicity protected only an individual's "name or likeness". The courts held that the law protected an individual's "identity".

*Motschenbacher v. R.J. Reynolds Tobacco Co.*, 498 F.2d 821 (9th Cir. 1974)
This case involved the unauthorized use of a picture of a distinctive race car in a television commercial. The court held that a picture of a distinctive race car that was associated with the plaintiff violated the plaintiff's right of publicity even though the driver's features were not visible.

*Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831 (6th Cir. 1983)
This case involved the unauthorized use of a distinctive catch phrase. Plaintiff Johnny Carson was introduced every night as host of "The Tonight Show" with the phrase "Here's Johnny". This phrase was clearly associated with the plaintiff. The phrase in this case was not even used to describe an individual, but rather as a joking reference to the portable toilet itself. The defendant went even further with the word play by use of the phrase, "The World's Foremost Commodian". The court found that the plaintiff's right of publicity was violated. This case set the precedent that any unauthorized use of an individual's identity for commercial purposes is a violation of that individual's right of publicity.

*White v. Samsung Electronics America, Inc.*, 971 F.2d 1395 (9th Cir. 1992)
This case involved a print ad that featured a robot dressed in a wig, gown, and jewelry posing next to a mock "Wheel of Fortune" game show set. Plaintiff Vanna White was the hostess for "Wheel of Fortune". The ad clearly invoked her identity through the most unconventional of means. The court found in favor of the plaintiff for her common law right of publicity claim and her Lanham Act false endorsement claim.

*Henley v. Dillard Department Stores*, 46 F. Supp. 2d 587 (N.D. Tex. 1999)
This case involved a joking reference to Don Henley, the lead singer of The Eagles. The defendant ran a newspaper advertisement for a shirt known as a "henley". The ad featured the photograph of a man wearing a henley shirt with the words, "This is Don" in large print and an arrow pointing toward the man's head. The ad included a second arrow pointing to the shirt that said, "This is Don's henley". The court granted Summary Judgment to the plaintiff for his right of publicity claim even though the man in the ad bore no resemblance to the plaintiff.

While right of publicity law has protected an individual's "name or likeness" from inception, it has also protected the much broader concept of an individual's "identity". Under common law, anything unique and distinctive that triggers an association to an individual is considered to be an individual's "identity".

## THE IL RIGHT OF PUBLICITY ACT

On January 1, 1999, the IL Right of Publicity Act supplanted common law right of publicity in the State of Illinois with a more robust and well defined law that favors the individual in many ways.

(765 ILCS 1075/60)
Sec. 60. Rights and remedies. The rights and remedies provided for in this Act are meant to supplant those available under the common law as of the effective date of this Act, but do not affect an individual's common law rights as they existed before the effective date of this Act. Except for the common law right of publicity, the rights and remedies provided under this Act are supplemental to any other rights and remedies provided by law including, but not limited to, the common law right of privacy.
(Source: P.A. 90-747, eff. 1-1-99.)

Here are some of the ways that the IL Right of Publicity Act is more favorable to the individual:

*The IRPA extends the right of publicity to every individual regardless of whether the identity of that individual has been used for a commercial purpose during the individual's lifetime.

*The IRPA requires that consent must be in writing whereas common law right of publicity may have allowed a defendant to claim verbal or implied consent.

*The IRPA defines the key terms used in the Act to eliminate any possible confusion as to the intent of the law makers.

*The IRPA extends an individual's right of publicity for 50 years after the date of the individual's death.

*The IRPA states the only unauthorized uses of an individual's identity for which the Act does not apply.

*The IRPA specifically states what monetary relief is available to the plaintiff.

*The IRPA has a statute of limitations of 5 years whereas the statute of limitations under common law right of publicity was only one year.

The IL Right of Publicity Act recognizes the right of every individual to control the use of their identity for **commercial purposes.**

(765 ILCS 1075/10)
Sec. 10. Recognition of right of publicity. The right to control and to choose whether and how to use an individual's identity for commercial purposes is recognized as each individual's right of publicity.
(Source: P.A. 90-747, eff. 1-1-99.)

A person is strictly prohibited from using an individual's identity for **commercial purposes** without having obtained previous written consent.

(765 ILCS 1075/30)
Sec. 30. Limitations regarding use of an individual's identity.
(a) A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons specified in Section 20 of this Act or their authorized representative.
(b) If the individual's death occurs after the effective date of this Act, a person may not use that individual's identity for commercial purposes for 50 years after the date of the individual's death without having obtained previous written consent from the appropriate person or persons specified in Section 20 of this Act.
(Source: P.A. 90-747, eff. 1-1-99.)

The IL Right of Publicity Act was written clearly and concisely and this Court should have no trouble interpreting the meaning of the Act. The IL Right of Publicity Act defines the key terms used in the Act to prevent any possible confusion as to the intent of the lawmakers.

(765 ILCS 1075/5)
Sec. 5. Definitions. As used in this Act:
"Commercial purpose" means the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising.

"Identity" means any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice.

"Individual" means a living or deceased natural person, regardless of whether the identity of that individual has been used for a commercial purpose during the individual's lifetime.

"Juristic person" means a partnership, trust, estate, corporation, unincorporated association, or other organization capable of suing and being sued in a court of law.

"Name" means the actual name or other name by which an individual is known that is intended to identify that individual.

"Person" means a natural or juristic person.

"Work of Fine Art" means (i) a visual rendition including, but not limited to, a painting, drawing, sculpture, mosaic, videotape, or photograph; (ii) a work of calligraphy; (iii) a work of graphic art including, but not limited to, an etching, lithograph, serigraph, or offset print; (iv) a craft work in materials including, but not limited to, clay, textile, fiber, wood, metal, plastic, or glass; or (v) a work in mixed media including, but not limited to, a collage, assemblage, or work consisting of any combination of items (i) through (iv).
(Source: P.A. 90-747, eff. 1-1-99.)

There are only three elements that need to be established for a defendant to be held liable under the IL Right of Publicity Act. These elements are (1) identity, (2) commercial purpose, and (3) lack of consent.

"Identity" means any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice.

The IL Right of Publicity Act defines "identity" to mean "any attribute of an individual that serves to identify that individual". This plaintiff's world record certainly meets this definition.

The Defendants invoked my "identity" when they printed GUINNESS WORLD RECORDS on their footbag. Guinness is known for listing world records. Printing GUINNESS WORLD RECORDS on a hat or shirt does not trigger an association to a specific world record. Printing GUINNESS WORLD RECORDS on a footbag triggers an association to a specific world record; my world record.

My record is known as "the Footbag World Record" because I hold the record for the game of Footbag. Printing GUINNESS WORLD RECORDS on a footbag triggers an association to the Footbag World Record.

GUINNESS WORLD RECORDS printed on a footbag is my "identity" as defined by the IL Right of Publicity Act and by the precedence established in numerous previously decided cases under common law.

Guinness is clearly trading on my "identity" as the Footbag World Record holder, not as a chronicler of records. The Defendants themselves confirm this symbolic reference to my record when they actually use my name and the exact number of kicks of my record on the card. The card was sealed in the bag with the Defendants' "GUINNESS WORLD RECORDS" footbag.

The IL Right of Publicity Act's definition of "identity" also specifically includes "name". This plaintiff's "identity" was clearly used extensively throughout the entire promotion.

"Commercial purpose" means the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising.

By printing GUINNESS WORLD RECORDS on their footbag, the Defendants clearly used my identity "on" their product.

By using my name and record on the card, the Defendants clearly used my identity "in connection with" their products.

By using my name and record in conjunction with the Defendants logos, the Defendants clearly used my identity "for purposes of advertising or promoting products."

The IL Right of Publicity Act stipulates in Sec. 30 that consent must be "previous written consent". The Defendants did not obtain my previous written consent to use my "identity" in their promotion.

(765 ILCS 1075/30)
Sec. 30. Limitations regarding use of an individual's identity.
(a) A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons specified in Section 20 of this Act or their authorized representative.

The Defendants clearly used my "identity" for commercial purposes during my lifetime without having obtained my previous written consent. The Defendant should be found liable for violating my rights under the IL Right of Publicity Act.

The only unauthorized uses of an individual's identity for which the IL Right of Publicity Act does not apply are specifically stated in the following section.

(765 ILCS 1075/35)
Sec. 35. Applicability.
(a) This Act applies to acts or events that take place after the effective date of this Act.
(b) This Act does not apply to the following:
(1) use of an individual's identity in an attempt to portray, describe, or impersonate that individual in a live performance, a single and original work of fine art, play, book, article, musical work, film, radio, television, or other audio, visual, or audio-visual work, provided that the performance, work, play, book, article, or film does not constitute in and of itself a commercial advertisement for a product, merchandise, goods, or services;
(2) use of an individual's identity for non-commercial purposes, including any news, public affairs, or sports broadcast or account, or any political campaign;
(3) use of an individual's name in truthfully identifying the person as the author of a particular work or program or the performer in a particular performance;
(4) promotional materials, advertisements, or commercial announcements for a use described under paragraph (1), (2), or (3) of this subsection; or
(5) use of photographs, videotapes, and images by a person, firm, or corporation practicing the profession of photography ("professional photographer") to exhibit in or about the professional photographer's place of business or portfolio, specimens of the professional photographer's work, unless the exhibition is continued by the professional photographer after written notice objecting to the exhibition has been given by the individual portrayed.
(Source: P.A. 90-747, eff. 1-1-99.)

The Defendants claimed that sections 35(b)(1), 35(b)(2), and 35(b)(3) all applied to this case.
The Court accepted the Defendants' contention that Sec. 35(b)(3) applied to this case.
On page #8 of the MEMORANDUM OPINION AND ORDER, the Court stated,

"Defendants argue that the third exemption applies here because defendants merely identified plaintiff as the person who once kicked a footbag 63,326 consecutive times; therefore, they 'truthfully identified' plaintiff as 'the author of a particular work or program or the performer in a particular performance.' The Court agrees with defendants that their reference to plaintiff falls within this exemption."

Under Sec. 35(b)(3), the IL Right of Publicity Act does not apply to the use of an individual's name in truthfully identifying the person as "the performer in a particular performance". Since this plaintiff did not perform in the Defendants' promotion, Sec. 35(b)(3) is not even remotely applicable.

For Sec. 35(b)(3) to apply, this plaintiff would not only have had to perform in the promotion, but in addition to that, my name could have only been used to identify this plaintiff as the performer in the **particular performance.**

The Defendants did not use this plaintiff's name in truthfully identifying this plaintiff as the performer in a particular performance; the Defendants used this plaintiff's name for commercial purposes.

On page #7-8 of the MEMORANDUM OPINION AND ORDER, the Court concluded that my "identity" was used for commercial purposes but the Court does not understand the implication of that fact.

Affirming the Defendants' crabbed self-serving interpretation that a "**particular performance**" means "any performance" would effectively overturn the precedence established in over fifty years of right of publicity law.

In *Palmer v. Schonhorn Enterprises, Inc.* 96 N.J. Super. 72 (1967) 232 A.2d 458, the court stated,

"There is little doubt that a person is entitled to relief when his name has been used without his consent, either to advertise the defendant's product or to enhance the sale of an article."

Fifty years ago, it was well established that a person is entitled to relief when his name has been used for commercial purposes without his consent.

*Palmer* was cited in this plaintiff's NOTICE OF SUPPLEMENTAL AUTHORITY to debunk the Defendants' argument that the Court should dismiss my case because the consumer sees my name and record only "after purchase".

*Palmer v. Schonhorn Enterprises, Inc.* is similar to this case in that the consumer does not see the plaintiffs' name and achievements until after purchase. The Palmer court had the following to say,

"The argument by defendant that it is not invading plaintiffs' rights of privacy because it does not advertise their names on the lid of the box, and because the purchaser does not know who the "23 famous golfers" are until he purchases and sees the contents, is not tenable."

The IL Right of Publicity Act's strict prohibition against any unauthorized use of an individual's identity for commercial purposes was put to the test in the following case.

*Jordan v. Jewel Food Stores, Inc.* 743 F.3d 509 (7th Cir. 2014)
This case involved a full-page ad congratulating former Bull's superstar Michael Jordan on the occasion of his induction into the Basketball Hall of Fame. The ad appeared in a special commemorative issue of Sports Illustrated Presents which was devoted exclusively to Jordan's remarkable career.

Jewel was offered free advertising space in the issue in exchange for agreeing to stock the magazine in its stores. Jewel accepted the offer from Sports Illustrated and ran an ad congratulating Jordan on being inducted into the Basketball Hall of Fame. The ad featured the "Jewel-Osco" logo and the defendant's marketing slogan was linked to Jordan in the text of the congratulatory message that said, "as we honor a fellow Chicagoan who was 'just around the corner' for so many years."

Jordan brought suit under the IL Right of Publicity Act and the Lanham Act. Jewel maintained that the ad was "noncommercial speech" and thus entitled to full First Amendment protection. The district court held that the ad was fully protected noncommercial speech and entered judgment for Jewel.

The United States Court of Appeals, Seventh Circuit reversed the district court's decision saying, "The ad is commercial speech and thus is subject to the laws Jordan invokes here." Jordan later settled this case.

Jordan was also victorious at trial in *Jordan v. Dominick's Finer Foods, LLC*, No. 1:2010-cv-00407 (N.D. Ill. 2015) for a similar congratulatory ad that appeared in the same issue of Sports Illustrated Presents.

Jordan's cases demonstrate that any use of an individual's identity for commercial purposes without having obtained previous written consent is a violation of that individual's right of publicity. The IRPA specifically states the penalty for violating an individual's right of publicity.

(765 ILCS 1075/30)
Sec. 30. Limitations regarding use of an individual's identity.
(a) A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons specified in Section 20 of this Act or their authorized representative.
(Source: P.A. 90-747, eff. 1-1-99.)

(765 ILCS 1075/40)
Sec. 40. Violations; monetary relief.
(a) A person who violates Section 30 of this Act may be liable for either of the following, whichever is greater:
(1) actual damages, profits derived from the unauthorized use, or both; or
(2) $1,000.
(b) Punitive damages may be awarded against a person found to have willfully violated Section 30 of this Act.
(Source: P.A. 90-747, eff. 1-1-99.)

(765 ILCS 1075/45)
Sec. 45 Establishment of profits.
In establishing profits under paragraph (1) of subsection (a) of Section 40 of this Act:
(a) the plaintiff is required to prove the damages or gross revenue attributable to the unauthorized use; and
(b) the defendant is required to prove properly deductible expenses.
(Source: P.A. 90-747, eff. 1-1-99.)

**THE STATUTE OF LIMITATIONS OF THE IL RIGHT OF PUBLICITY ACT**

The IL Right of Publicity Act classifies the rights of the individual under the Act to be property rights.

(765 ILCS 1075/15)
Sec. 15. Transferability, descendability, and divisibility.
The rights under this Act are property rights that are freely transferable in whole or in part to any person either by written transfer, including but not limited to wills and trusts, or by interstate succession only to an individual's spouse, parents, children, and grandchildren, except that the rights under this Act are not subject to levy or attachment and may not be the subject of a security interest. Nothing in this Section limits the ability of any party to levy, attach, or obtain a security interest in the proceeds of the rights under this Act or the proceeds of the exercise of those rights.
(Source: P.A. 90-747, eff. 1-1-99.)

The previous section makes it clear that an individual's rights under the IL Right of Publicity Act are property rights. In addition to this, the heading of the IL Right of Publicity Act states in big bold letters **PROPERTY**. (Exhibit B of AMENDED COMPLAINT) The statute of limitations for the IL Right of Publicity Act is determined by looking to the compiled statutes of limitations for **PROPERTY** in the State of Illinois.

The statute of limitations varies depending on the particular type of property involved. There is not a specific reference to the right of publicity in the compiled statutes. This means that the statute of limitations that applies to the IL Right of Publicity Act is five years as stated in the following section:

(735 ILCS 5/13-205) (from Ch. 110, par. 13-205)
Sec. 13-205. Five year limitation. Except as provided in Section 2-725 of the "Uniform Commercial Code", approved July 31, 1961, as amended, and Section 11-13 of "The Illinois Public Aid Code", approved April 11, 1967, as amended, actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued.
(Source: P.A. 82-280.)

The statute of limitations for the IL Right of Publicity Act can only be properly determined in the manner described above. The court in the following case correctly determined that the statute of limitations of the IL Right of Publicity Act is five years.

*Toney v. L'Oreal USA Inc.* No. 02 C 3002 (N.D. Ill. 2002)
This case involved the use of the plaintiff's photograph beyond the time allowed for in a contract. The defendant argued that the case was time barred and that Toney's IRPA claim was preempted by Section 301 of the Copyright Act. The court rejected the defendant's time barred argument with the following statement:

"Alternatively, the Defendants argue that Plaintiff's claim under the Illinois Right of Publicity Act should be dismissed because it is time barred by a one year statute of limitations. This Court rejects such argument. Defendants, try to equate the Illinois Right of Publicity Act with the right of privacy which has a one year statute of limitations. However, these two rights are clearly different. 'It is true that the rights of publicity and of privacy evolved from similar origins; however, whereas the right of privacy protects against intrusions on seclusion, public disclosure of private facts, and casting an individual in a false light in the public eye, the right of publicity protects against the unauthorized exploitation of names, likenesses, personalities, and performances that have acquired value for the very reason that they are known to the public.' Baltimore Orioles, 805 F.2d at 678. The Illinois Right of Publicity Act does not explicitly, within the statutory provisions of the Act, provide for a statute of limitations. Because there is no statute of limitations explicitly specified within the confines of the Act, this Court finds that the statute of limitations that applies in this instance is 735 ILCS 5/13-205, which provides a five-year period to commence civil actions related to, among other things, injury done to real or personal property and also, civil actions not otherwise provided for. Plaintiff alleges that Wella purchased the Ultra Sheen Supreme line brand from L'Oreal on or about December 2000. Plaintiff filed her complaint on March 20, 2002; which is clearly within the time frame mandated by the five year statute of limitations applicable here."

The court rejected the defendant's time barred argument but did find that Toney's IRPA claim was preempted by Section 301 of the Copyright Act. Toney appealed. The United States Court of Appeals, Seventh Circuit reversed the district court's preemption ruling, let stand the statute of limitations ruling, and remanded the case for trial.

In this case, the Defendants' promotion ran from August 12th to September 22nd 2013. This complaint was filed on August 11, 2015 which is clearly within the time frame mandated by the five year statute of limitations applicable to a claim under the IL Right of Publicity Act.

The Defendants in this case argue that the statute of limitations of the IL Right of Publicity Act is the same as the one year limitations period applicable to a right of publicity claim under common law. The Defendants' argument is specious on its face. The IL Right of Publicity Act does not amend common law right of publicity; the IL Right of Publicity Act supplants common law right of publicity.

(765 ILCS 1075/60)
Sec. 60. Rights and remedies. The rights and remedies provided for in this act are meant to supplant those available under the common law as of the effective date of this Act, but do not affect an individual's common law rights as they existed before the effective date of this Act. Except for the common law right of publicity, the rights and remedies provided under this Act are supplemental to any other rights and remedies provided by law including, but not limited to, the common law right of privacy.
(Source: P.A. 90-747, eff. 1-1-99.)

Supplant means to "supersede" or "take the place of". Common law right of publicity no longer exists in the State of Illinois. This case is governed by the IL Right of Publicity Act and nothing from common law right of publicity is applicable to this case, including the statute of limitations.

The Defendants cite *Blair v. Nevada landing Partnership* 369 Ill. App. 3d 318 (2006) to suggest that the IL Right of Publicity Act has a one year statute of limitations. If anything, this case highlights the need for the IRPA's requirement that consent be in writing.

In *Blair*, the plaintiff was asked by his employer to do a photo shoot where the plaintiff pretended to be dining at the Buckingham Steakhouse. The plaintiff was told the photographs would be used for promotional purposes and the plaintiff verbally consented. In 1995, about six months after the photo shoot, the plaintiff's photo appeared on fliers, brochures, signs, billboards, restaurant menus, calendars, and postcards. The plaintiff resigned his employment with the defendant in 1999. The plaintiff claimed that he complained about the use of his photo in 1999 and again in 2000, but the defendant claimed that the plaintiff did not complain until January 2004 at which time the defendant immediately stopped using the plaintiff's photo.

The plaintiff filled a complaint on September 14, 2004 alleging a common-law claim of appropriation of likeness. The plaintiff filed an amended complaint adding a claim under the IL Right of Publicity Act on July 14, 2005.

Having determined that the cause of action accrued in 1995, the court correctly ruled that the case was governed by common law. The statute of limitations for a right of publicity claim under common law is one year. The court dismissed the case as time barred.

Because of the peculiar circumstances of the case, the court assumed that the statute of limitations of the IL Right of Publicity Act was the same as a right of publicity claim under common law. The court's entire expressed thoughts on the statute of limitations of the IL Right of Publicity Act are as follows,

"The Right of Publicity Act does not identity a specific statute of limitations. However, since the Right of Publicity Act completely supplanted the common-law tort of appropriation of likeness (765 ILCS 1075/60 (West 2002)), we find applicable the one-year statute of limitations that pertained to the common-law tort."

The only time the statute of limitations of the IL Right of Publicity Act comes into play is when the court also dismisses as time barred the plaintiff's unsubstantiated claim that he withdrew his consent in 1999. The court had this to say,

"We need not determine in this case whether the plaintiff was entitled to revoke his consent or whether the plaintiff successfully did so. Even if the plaintiff revoked his consent in 1999, the plaintiff's cause of action was still untimely. Had the cause of action accrued in 1999, the only claim that the plaintiff could have brought based on the revocation was the statutory claim, as the common-law claim had then been supplanted by the statutory cause of action. See 765 ILCS 1075/60 (West 2002). The one-year statute of limitations on the Right of Publicity claim would have expired in 2000. The plaintiff's amended claim

filed on July 14, 2005, even if it could relate back to the original claim filed on September 20, 2004, was filed well outside of that time."

The court assumed that the statute of limitations of the IL Right of Publicity Act was the same as that of the common law tort. The court's assumption was incorrect but the plaintiff was not arguing that the IL Right of Publicity Act had a five year statute of limitations and it would not have mattered if he did. The plaintiff's complaint was filed more than five years after the unsubstantiated cause of action.

While the court's incorrect assumption did not matter in that case, defense lawyers have repeatedly characterized the court's inconsequential assumption as a presidential ruling that was the product of well- reasoned careful deliberation.

Citing *Blair*, the district court in *Berry v. Ford Models, Inc.*, 525 F. App'x 451 (7th Cir. 2013) ruled that the IL Right of Publicity Act has a one year statute of limitations. The United States Court of Appeals, Seventh Circuit expressly refused to affirm that decision with the following quote:

"This litigation is frivolous, and though both parties devote much effort arguing about the timeliness of Berry's claim, we see no point in deciding a question of Illinois law in a case where the statute of limitations --- whether one year or five --- could not possibly make a difference".

I respectfully request that the United States Court of Appeals, Seventh Circuit unequivocally decides a question of Illinois law in this case. Defense lawyers will continue to cite *Blair* and endlessly tie up the legal system with their frivolous arguments until the United States Court of Appeals, Seventh Circuit specifically states that the statute of limitations of the IL Right of Publicity Act is five years.

This should not be a difficult determination. The only evidence that the statute of limitations of the IL Right of Publicity Act is one year is the erroneous assumption in *Blair v. Nevada Landings Partnership*. A quick review of that case will reveal that the statute of limitations issue was never actually litigated.

*Toney v. L'Oreal* was actually litigated and the court gave a well-reasoned thoughtful opinion that was affirmed by the United States Court of Appeals, Seventh Circuit. In *Blair v. Nevada Landings Partnership*, the IL Court of Appeals assumes that the statute of limitations of the IL Right of Publicity Act is the same as the common-law tort it replaced with no litigation or argument what-so-ever.

**FRAUDULENT CONCEALMENT**

This case is not time barred even if the statute of limitations of the IL Right of Publicity Act was one year. The Defendants engaged in fraudulent concealment by misrepresenting this plaintiff's legal rights to this plaintiff before this plaintiff ever filed suit. Equitable estoppel precludes the Defendants from relying on a statute of limitations regardless of whether that statute of limitations of the IL Right of Publicity Act is one year or five.

The letters cited in the following section can be found in their entirety in Exhibits H, I, and J of the ANSWER TO DEFENDANTS' MOTION TO DISMISS.

I had a conversation with Guinness lawyer Michael Goulbourn at which time he asserted that he was not aware of any law that was violated when the Defendants used my name and record in their promotion.

On February 19, 2014, Guinness lawyer Michael Goulbourn wrote a letter to this plaintiff stating,

"As I commented when we spoke last year, Guinness World Records feels that the use of your name and record as part of the Wendy's promotion was factual in nature and no person would be led to believe that such usage constituted an endorsement of Wendy's business or products."

On March 26, 2014, lawyer Jay B. Ross wrote a letter on my behalf to Mr. Goulbourn alleging only a violation of my right of publicity and seeking "to settle this matter amicably".

On April 29, 2014, Marsha K. Hoover responded to Mr. Ross's letter saying,

"Our firm represents Guinness World Records ("GWR") with respect to intellectual property matters. I write in connection with your letter to our client of March 26, 2014, claiming that GWR has infringed the publicity rights of Ted Martin.

We have investigated the allegations in your letter and correspondence with Mr. Michael Goulbourn and have concluded that they are without merit. Mr. Martin's name was not used by GWR or Wendy's for the purpose of promoting either of their products, since no advertisement for the Wendy's giveaway ever mentioned him. It was not until a consumer opened the bag of giveaway items within the Wendy's meal would he or she have seen the card and been able to read about the GWR record Mr. Martin achieved. Accordingly, GWR did not go beyond the factual reporting of a record it had recognized, the same content that it publishes in its books. The difference is the medium, but not the nature of the expression. The statement of fact about Mr. Martin's record was not commercial in nature and is protected by the First Amendment.

Unlike instances in which a person's identity is exploited for economic gain, GWR's publication of Mr. Martin's record did not have the "unmistakable commercial function" of enhancing the GWR brand in the minds of consumers. On the other hand, Mr. Martin has evidently been more than willing to use the GWR brand to tout his achievements. To the extent that it could be said that there is monetary value attached to Mr. Martin's publicity rights, GWR labors in maintaining its database of record achievements and recognizing Mr. Martin is a very large part of that value. Under the circumstances, GWR's use of Mr. Martin's record was undoubtedly a fair one.

We assume that our recitation of the facts, demonstrating that Mr. Martin's Guinness World Records achievement was mentioned in an incidental manner and was not part of any promotional communication, will put this matter to rest. Should you desire to engage in further discourse concerning your claims, kindly direct your correspondence to the undersigned."

After reading this letter, it was clear that Guinness was unwilling "to settle this matter amicably".

Mr. Ross was unable to litigate this matter for health reasons. I consulted with two other lawyers who were willing to take the case but I decided not to use either of them.

Ms. Hover clearly misrepresented this plaintiff's legal rights especially with the following statement:

"The statement of fact about Mr. Martin's record was not commercial in nature and is protected by the First Amendment."

Although I didn't know it at the time, the United States Court of Appeals, Seventh Circuit rejected this exact defense on February 19, 2014 in *Jordan v. Jewel Food Stores, Inc.* 743 F.3d 509 (2014).

At the time Ms. Hover wrote her letter, this plaintiff had not yet read the IL Right of Publicity Act and had never heard of the Lanham Act. This plaintiff was thus compelled to research Ms. Hover's claims before filing suit. After a considerable amount of time, I found Ms. Hover's claims to be completely unsupportable. However, Ms. Hover's misrepresentations did cause this plaintiff to delay filing suit.

I brought up this fraudulent concealment issue on page # 12 of the RESONSE TO MOTION TO DISMISS AMENDED COMPLAINT AND MOTION FOR SUMMERY JUDGEMENT.

I directed the court's attention to an article titled, "Fraudulent Concealment in Federal Court: Toward a more Disparate Standard?" by Richard L. Marcus. This article can be found if you Google "fraudulent concealment" and click "Fraudulent Concealment in Federal Court – UC Hastings".

On page # 833 of the article, the author states,

"Left to themselves to decide an increasing number of fraudulent concealment cases, lower courts rarely analyze the rules governing the application of the doctrine and often state conclusions without explaining them. Given this ad hoc approach of the lower courts, haphazard results have been almost inevitable, causing some district judges to complain that they cannot discern proper standards for the application of the doctrine."

On page # 863 of the article, the author states the proper standard that would apply to this case even if the statute of limitations of the IL Right of Publicity Act was one year instead of five years:

"Equitable estoppel precludes reliance on limitations by a defendant who has induced the plaintiff to delay suit by misrepresenting the plaintiff's legal rights to him ...".

The Defendants clearly induced this plaintiff to delay suit by misrepresenting this plaintiff's legal rights to this plaintiff. The Defendants are precluded from relying on a limitations period regardless of whether the statute of limitations of the IL Right of Publicity Act is one year or five years.

The District Court clearly does not understand right of publicity law and therefore cannot determine whether or not the Defendants engaged in fraudulent concealment. The District Court needs guidance on the application of the IL Right of Publicity Act, the statute of limitations of the IL Right of Publicity Act, and the proper standard for the application of the fraudulent concealment doctrine.

**THE LANHAM ACT**

(a) Civil Action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

The law listed above is Sec. 43(a) of the Lanham Act. (15 U.S. Code § 1125)
Sec. 43(a)(1)(A) is commonly referred to as the false endorsement arm of the Lanham Act.
Sec. 43(a)(1)(B) is commonly referred to as the false advertising arm of the Lanham Act.

Both arms of the Lanham Act require the Defendants not to engage in false or misleading advertising. Any argument put forth by the Defendants that requires the consumer to recognize and disregard a false or misleading advertisement should be rejected by this Court.

Under the Lanham Act, it is not incumbent upon the consumer to determine that an advertisement is false or misleading and then disregard the advertisement; it is incumbent upon the Defendants not to engage in false or misleading advertising in the first place.

The Defendants in this case clearly misled consumers into believing that this plaintiff was affiliated with the Defendants and that this plaintiff approved of the Defendants' products.

The Defendants also misrepresented the nature, characteristics, and qualities of their footbag by referring to their footbag as "record-breaking" and suggesting equivalency to the footbag that this plaintiff manufactured and used to set the Footbag World Record of 63,326 consecutive kicks.

**FALSE ENDORSEMENT UNDER THE LANHAM ACT**

The Lanham Act prohibits an advertiser from using a person's "persona" in a manner that is likely to cause confusion as to the "affiliation, connection, or association" of the advertiser with that person or as to the approval the advertiser's "goods, services, or commercial activities" by that person.

Sec. 43(a)(1)(A) is the false endorsement arm of the Lanham Act and is as follows:

"Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which---

is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

I have already shown in this brief that my record is commonly referred to as the Footbag World Record. GUINNESS WORLD RECORDS printed on a footbag is a far from subtle device that triggers an association to the Footbag World Record and invokes my "persona" as the Footbag World Record holder.

If the Defendants stopped at just printing GUINNESS WORLD RECORDS on their footbag, this case would be similar to *White v. Samsung America, Inc.* 971 F.2d 1395 (1992).

In *White*, the United States Court of Appeals, Ninth Circuit stated, "In cases involving confusion over endorsement by a celebrity plaintiff, 'mark' means the celebrity's persona."

In *White*, the defendant invoked game show hostess Vanna White's "persona" by use of a robot dressed in wig, gown, and jewelry posing next to a mock Wheel of Fortune game show set.

In this case, the Defendants invoked this plaintiff's "persona" as the Footbag World Record holder by printing GUINNESS WORLD RECORDS on their footbag.

In *White*, the United States Court of Appeals, Ninth Circuit looked for guidance to the seven applicable factors enunciated in *AMF, Inc. v. Sleekcraft Boats*, 599 F .2d 341 (9th Cir. 1979) and found in favor of plaintiff Vanna White on her false endorsement claim.

Unlike *White*, the Defendants in this case did not stop with just the stylized invocation of my "persona".

The Defendants in this case made it absolutely clear whose "persona" they were invoking when they used this plaintiff's name and record on the card. (Exhibit E of Complaint)

The card which was sealed inside the plastic bag with the Defendants' promotional footbag said,

"How many times in a row can you kick this footbag without hitting the ground? Back in 1997, Ted Martin made his world record of 63,326 kicks in a little less than nine hours! Practice makes perfect, so first try flicking the footbag from one foot to the other or to your knee."

The Defendants conspicuously used this plaintiff's name and record "in connection with" their footbag and the accompanying Wendy's Kids' meal. This is "likely to cause confusion" as to the "approval" of the Defendants' "goods" by this plaintiff. *See Abdul Jabar v. General Motors*, 75 F. 3d 1391 (9th Cir. 1996)

In addition to this, the Defendants also used this plaintiff's name and record "in connection with" the Defendants' logos. The Defendants' logos were on the in-store display, the Wendy's Kids' Meal bag, the plastic bag containing the card and footbag, and the card. This is "likely to cause confusion" as to the "affiliation, connection, or association" of the Defendants with this plaintiff.
*See Jordan v. Jewel Food Stores, Inc.* 743 F. 3d 509 (7th Cir. 2014)

Using my name and record "in connection with" either the Defendants "goods" or logos is enough to establish liability under the false endorsement arm of the Lanham Act. In this case, the Defendants used my name and record "in connection with" both the Defendants' "goods" and logos.

The most widely used "likelihood of confusion" test in Lanham Act false endorsement cases is the seven applicable factors enunciated in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979). These seven factors are: (1) strength of plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendants intent in selecting the mark.

The Court did not use a "likelihood of confusion" test, but here is how these factors apply to this case:

(1) Strength of plaintiff's mark; as stated in *White v. Samsung*, "In cases involving confusion over endorsement by a celebrity plaintiff, 'mark' means the celebrity's persona." This plaintiff is universally recognized as the Footbag World Record holder. The Defendants first invoke my "persona" by printing GUINNESS WORLD RECORDS on their footbag and then again by using my name in conjunction with the actual number of kicks of my record. My "mark" is strong.

(2) Relatedness of the goods; as stated in *White v. Samsung*, "In cases concerning confusion over celebrity endorsement, the plaintiff's 'goods' concern the reasons for or source of the plaintiff's fame." The reason for this plaintiff's fame is the Footbag World Record. This plaintiff's "goods" are closely related to a footbag. The Defendants created the relationship with the Defendants' "goods" by including a footbag in the Wendy's Kids' Meal.

(3) Similarity of the marks; if the Defendants stopped at just printing GUINNESS WORLD RECORDS on their footbag, the Court might have to deliberate on this factor. However, this plaintiff is positively identified by name and achievement in this promotion. The Defendants clearly used this plaintiff's "mark" in their promotion.

(4) Evidence of actual confusion; as stated on page #15 of AMENDED COMPLAINT, a footbag player from Montreal, Canada was in Chicago for a Footbag tournament and I told him that I was suing the Defendants. His response was, "For What?" I told him I was suing the Defendants for using my identity without my permission. His response was, "We thought you had something to do with it." This is evidence of actual confusion and I will secure a letter from this individual or call him as a witness if it becomes necessary.

(5) Marketing channels used; the Defendants distributed the promotional materials themselves, thus increasing the likelihood that the consumer will believe that this plaintiff is affiliated with the Defendants and that this plaintiff approved of the Defendants' products.

(6) Likely degree of purchaser care; consumers are not particularly careful in determining who is endorsing a product. The targeted consumers in this case are children; making confusion as to endorsement even more likely.

(7) Defendant's intent in selecting the mark; the Defendants' intent is readily apparent on the card.

"How many times in a row can you kick this footbag without it hitting the ground? Back in 1997, Ted Martin made his world record of 63,326 kicks in a little less than nine hours! Practice makes perfect, so first try flicking the footbag from one foot to the other or to your knee."

**While directly addressing the consumers,** the Defendants say "**this footbag**" and then directly connect the Defendants' promotional footbag to this plaintiff. The Defendants clearly intended to profit by deceiving consumers as to the affiliation of the Defendants with this plaintiff and as to the approval of the Defendants' goods by this plaintiff.

Only a majority of the above factors favoring the plaintiff is required to establish a defendant's liability. In this particular case, all of the above factors favor this plaintiff. The Defendants should be found liable for violating my rights under the false endorsement arm of the Lanham Act.

## FALSE ADVERTISING UNDER THE LANHAM ACT

To begin with, I am bringing suit for false advertising not as the Footbag World Record holder but as the manufacturer of actual "record-breaking" footbags.

I personally manufactured the footbags that were used to set three singles consecutives world records, nine doubles world records, Andy Linder's five minute timed world record, and the record for most people playing in a circle.

Since 1987, I have sold footbags, given footbags away, and donated footbags to be auctioned off for charitable purposes. In short, I have been in the footbag business for thirty years.

Late in March of this year, I began selling a footbag that is just like the custom made footbag that I personally made and used to set the Footbag World Record of 63,326 consecutive kicks.

This footbag can be found on the internet if you Google: worldfootbag.com / "The Record Setter".

Sec. 43(a)(1)(B) is the false advertising arm of the Lanham Act and is as follows:

"Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which---

in commercial advertising or promotion misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

In an article titled, "9 Key Questions About Lanham Act False Advertising Suits" at an ALM website called Corporate Counsel; the authors' answers to the following questions should be informative.

2. What counts as "advertising"?

"False advertising suits under the Lanham Act are not limited to traditional print or TV ads. Almost anything designed to influence consumers' purchasing decisions may count, so long as the promotional material is sufficiently disseminated to the relevant public. Examples of actionable advertising and promotional material include radio commercials, coupons, labels, and Internet advertising."

5. What if my competitor's advertising is literally true but is nevertheless misleading?

"Truthful advertising can give rise to a Lanham Act claim if found to convey a misleading message, despite the literally truthful language of the ad.

Generally speaking, Lanham Act plaintiffs can assert "literal" or "implied" claims. A literally false claim is one that is false on its face: "Product X relieves pain more effectively than Product Y," where Product Y is in fact more effective or just as effective as product X.

If a Lanham Act plaintiff persuades the court that the challenged advertisement is literally false, the court may grant relief without considering extrinsic evidence of consumer reaction to the ad."

The Defendants in this case describe all of their toys, including the footbag, as "record-breaking".

The term "record-breaking" is a very specific term that must be legitimately connected to a specific record to have any chance of being considered truthful.

In the internet ad, the Defendants declare that every Wendy's Kids' Meal will come with one of six "Guinness World Records record-breaking toys." (Exhibit A of Complaint)

Under the heading of **Trick footbag,** the Defendants mention a record saying "Once the neighborhood gets a hold of the skills on this footbag, it's only a matter of time before the record of 946 people playing in a circle at once gets taken down."

It is clear from the context that the term "record-breaking" is used to describe the characteristics of the footbag and not, as the Defendants suggest, used to describe some speculative possibility of breaking a record with the footbag. The term "record-breaking" is therefore not connected to the record for most people playing in a circle. Even if it was, this plaintiff's footbags were used for that record as well.

In the promotion, the Defendants explicitly connect the term "record-breaking" to a specific record.

One side of the Wendy's Kids' Meal bag says, "BREAK A RECORD WITH THESE RECORD-BREAKING TOYS!" The other side of the Kids' Meal bag says "1 of 6 record-breaking toys inside!" (Exhibit C of Complaint)

The Defendants printed GUINNESS WORLD RECORDS on their footbag and described their footbag as "record-breaking" on both sides of the Wendy's Kids' Meal bag. The Defendants' footbag and a card came sealed together in a separate plastic bag. Under the heading of INSTRUCTIONS, the card states:

"How many times in a row can you kick this footbag without it hitting the ground? Back in 1997, Ted Martin made his world record of 63,326 kicks in a little less than nine hours! Practice makes perfect, so first try flicking the footbag from one foot to the other or to your knee."

**While directly addressing the consumer**, the Defendants say **"this footbag"** and explicitly connect their promotional footbag to this plaintiff's 63,326 kick world record.

Even without the "record-breaking" reference, the card strongly suggests equivalency to the footbag used to set the 63,326 kick world record. The Defendants say **"this footbag"** and then equate their footbag with the footbag this plaintiff manufactured and used to set the 63,326 kick world record.

In Exhibit K of ANSWER TO THE DEFENDANTS' MOTION TO DISMISS, I produced an article from the Chicago Tribune that contained the photographs of two footbags. The footbag that kind of looks like a soccer ball was used to set the world record of 51,155 kicks. I would later go on to use the other pictured footbag to set the current world record of 63,326 kicks.

As the Court can see from the photograph, the actual "record-breaking" footbag is nothing like the Defendants' promotional footbag. The actual "record-breaking" footbag has 62 panels and is made of leather while the Defendants promotional footbag has only two panels and is made of fabric.

The Defendants' promotional footbag is grossly inferior to the actual "record-breaking" footbag.

The Defendants' suggestion that their footbag is equivalent to the footbag used to set the 63,326 kick world record is a false representation of fact that misrepresents the nature, characteristic and qualities of the Defendants' goods.

The Defendants' description of their footbag as "record-breaking" is a false representation of fact that misrepresents the nature, characteristics, and qualities of the Defendants' goods.

The Defendants' description of their footbag as "record-breaking" can easily be determined to be "literally false". There is literally nothing "record-breaking" about the Defendants' footbag.

I am the manufacturer of the actual "record-breaking" footbag that was used to set the 63,326 kick world record. The Defendants should be found liable for violating my rights under the false advertising arm of the Lanham Act.

## STANDING UNDER THE FALSE ADVERTISING ARM OF THE LANHAM ACT

In the following case, the United States Supreme Court made clear in a unanimous decision how courts are to determine who has standing to bring suit under the false advertising arm of the Lanham Act.

*Lexmark International. Inc. v. Static Control Components, Inc.* No. 12-873. Decided March 25, 2014.

Lexmark sells the only style of toner cartridges that work with the company's laser printers. Each cartridge has a microchip that disables the empty cartridge unless Lexmark replaces the chip. Static Control developed a chip that mimics Lexmark's and sold the chip to "remanufactures" who refurbish and sell the used Lexmark cartridges in competition with Lexmark's own new and refurbished cartridges.

Lexmark brought suit for copyright infringement and Static Control counterclaimed alleging that Lexmark engaged in false and misleading advertising in violation of the Lanham Act.

Static Control maintained that Lexmark misled consumers into believing that they were legally bound to return the used cartridges to Lexmark after a single use.

In addition to that, the United States Supreme Court said on page #3 of the Opinion of the Court:

"Lexmark 'sent letters to most of the companies in the toner cartridge remanufacturing business' falsely advising those companies that it was illegal to sell refurbished Prebate cartridges and, in particular, that it was illegal to use Static Control's products to refurbish those cartridges."

The question raised by Lexmark in this case was whether Static Control had standing to bring suit under the false advertising arm of the Lanham Act.

The district court held that Static Control lacked "prudential standing" to bring a Lanham Act claim by applying the multifactor balancing test used in Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519.

The United States Court of Appeals, Sixth Circuit reversed that decision using the Second Circuit's "reasonable interest" test.

The Supreme Court rejected the use of all previously used balancing tests and made clear how the courts were to determine who has standing to bring suit on page #16 of the Opinion of the Court:

"While none of those tests is wholly without merit, we decline to adopt any of them. We hold instead that a direct application of the zone-of -interests test and the proximate-cause requirement supplies the relevant limits on who may sue."

The Supreme Court rejected the use of all previously used balancing tests but affirmed the United States Court of Appeals, Sixth Circuit's decision that Static Control had standing to sue under the Lanham Act.

On page # 19-20 of the Opinion of the Court, the Supreme Court elaborated further on the question of standing with the following comments:

"When a defendant harms a plaintiff's reputation by casting aspersions on its business, the plaintiff's injury flows directly from the audience's belief in the disparaging statements. Courts have therefore afforded relief under § 1125(a) not only where a defendant denigrates a plaintiff's product by name, see, *e.g., McNeilab, Inc. v. American Home Prods. Corp.*, 848 F. 2d 34, 38 (CA2 1988), but also where the defendant damages the product's reputation by, for example, equating it with an inferior product, see, *e.g., Camel Hair and Cashmere Inst. of Am., Inc. v. Associated Dry Goods Corp.*, 799 F. 2d 6, 7-8, 11-12 (CA1 1986); *PPX Enterprises, Inc. v. Audiofidelity, Inc.*, 746 F. 2d 120, 122, 125 (CA2 1984). Traditional proximate-causation principles support those results: As we have observed, a defendant who "'seeks to promote his own interests by telling a known falsehood to or about the plaintiff or his product'" may be said to have proximately caused the plaintiff's harm. *Bridge*, 553 U.S., at 657 (quoting Restatement (Second) of Torts § 870, Comment *h* (1977); emphasis added in *Bridge*)."

Justice Scalia, writing for the unanimous Court, states above, "but, also where the defendant damages the product's reputation by, for example, equating it with an inferior product".

The Defendants do precisely that in this case! The Defendants print GUINNESS WORLD RECORDS on their footbag, describe their footbag as "record-breaking", and then explicitly equate **"this footbag"** with the footbag this plaintiff manufactured and used to set the 63,326 kick world record.

This plaintiff is claiming a reputational injury from disparagement by Defendants who sought to promote their own interests by describing their footbag as "record-breaking" and suggesting that their footbag was equivalent to the footbag this plaintiff manufactured and used to set the 63,326 kick world record.

The United States Supreme Court made it clear in *Lexmark v. Static Control Components, Inc.* that this plaintiff has standing to bring suit under the false advertising arm of the Lanham Act.

## THE DEFENDANTS' ACTIONS ARE SANCTIONABLE UNDER FRCP RULE 11(b)

(b) REPRESENTATIONS TO THE COURT. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) It is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) The claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) The factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Under **Notes of Advisory Committee on Rules—1983 Amendment**, FRCP Rule 11 states on page #6,

"Courts currently appear to believe they may impose sanctions on their own motion. *See North American Trading Corp.*, 73 F.R.D. 293 (S.D.N.Y. 1979). Authority to do so has been made explicit in order to overcome the traditional reluctance of courts to intervene unless requested by one of the parties. The detection and punishment of a violation of the signing requirement, encouraged by the amended rule, is part of the court's responsibility for securing the system's effective operation."

Even after this Pro Se plaintiff informed the District Court that the Defendants' claims and defenses were unsupported by existing law, the District Court still failed to realize that the Defendants' claims and defenses were legally unsupportable and dismissed my complaint with prejudice.

It should be clear that the Defendants violated all four signing requirements under FRCP Rule 11(b).

The Defendants brazenly and willfully violated the provisions under FRCP Rule 11(b)(2) that require that the Defendants' "claims, defenses, and other legal contentions are warranted by existing law".

On page # 8-9 of the MEMORANDUM OPINION AND ORDER, the District Court states,

"Defendants did nothing but truthfully identify plaintiff as the holder of one of the world records reported by Guinness, as an example of one of the records it reports. Plaintiff does not challenge Guinness's right to list his record in its book, and it would be nonsensical to hold that the law prohibits Guinness from reciting that bare fact in a promotional item but permits it to include the fact in the book it sells. Plaintiff fails to state a claim for violation of his right of publicity under IRPA."

The District Court fundamentally does not understand right of publicity law. The Court fundamentally does not understand right of publicity law because of numerous legally unsupportable representations made to the Court by the Defendants.

On page # 10 of the MEMORANDUM OPINION AND ORDER, the District Court states,

"Regardless of plaintiff's anecdotal account of what his business associates in Montreal might think, the Court remains unconvinced that plaintiff has plausibly alleged that ordinary consumers are likely to believe, based only on the fact that defendants mentioned plaintiff's record in the course of their promotional distribution of free footbags, that plaintiff endorsed the footbags. It is clear in the context of the promotion that mentioning plaintiff's record on the instructional card served only to offer a sample of the sort of world records Guinness publishes---and plaintiff does not claim that Guinness does not have the right to publish the record in its books. Plaintiff insists that merely by mentioning him in their promotion, defendants implied that he endorsed the free footbags they were distributing, but the promotion makes no explicit or implicit connection between plaintiff and those particular footbags. Indeed it makes no meaningful representations at all about the quality of the footbags; the promotion merely represents that footbags can be used to set records."

The District Court fundamentally does not understand the false endorsement arm of the Lanham Act. The District Court did not use any previously accepted "likelihood of confusion" test. The District Court instead uses a compilation of the Defendants' numerous legally unsupportable representations to make the above determination.

On page # 13 of the original MEMORANDUM OPINION AND ORDER, the District Court states,

"Defendants contend that the term "record-breaking," as used in the promotional materials, is puffery because it is essentially just a way to say "best" or "greatest"---in other words nothing."

The District Court then lists several examples of actual puffery, and then states,

"The Court agrees that the term "record-breaking" contains no factual content that positively misrepresents the nature, characteristics, qualities or origin of the toys, and it is not plausible that any consumer would rely on the term "record-breaking" as a statement about the nature or quality of the footbag. Rather, to the extent it refers to the attributes of the footbag at all, it serves only to make a vague or exaggerated claim of superiority, and it is therefore non-actionable puffery."

The District Court fundamentally does not understand the false advertising arm of the Lanham Act. The Court just accepts as true, the Defendants' numerous legally unsupportable representations.

The Defendants' representations were clearly made for improper purposes. The Defendants' actions have caused unnecessary delay by forcing this plaintiff to respond to obviously frivolous arguments. The Defendants' actions have caused this plaintiff to spend a considerable amount of time and money seeking to protect this plaintiff's legally recognized rights. Sanctions are not only appropriate but are necessary to secure the integrity of the legal system and to prevent further abuse.

## CONCLUSION AND RELIEF REQUESTED

The Defendants printed GUINNESS WORLD RECORDS on their promotional footbag, described their promotional footbag as "record-breaking", and then explicitly connected **"this footbag"** to this plaintiff and this plaintiff's 63,326 kick world record.

The Defendants' actions are strictly prohibited under the IL Right of Publicity Act and the Lanham Act. The Defendants' claims, defenses, and other legal contentions are not warranted by any existing law.

The laws I invoke in this case are well-vetted. It is clear that this plaintiff is entitled to judgment as a matter of law. I respectfully request that this Court grants this plaintiff Summary Judgment or gives the District Court the necessary guidance to do so.

The District Court needs guidance on the application of IL Right of Publicity Act, the statute of limitations of the IL Right of Publicity Act, and the fraudulent concealment doctrine.

The District Court also needs guidance on the application of both the false endorsement arm and the false advertising arm of the Lanham Act.

I seek in relief:

(a) Reverse the Motion to Dismiss.
(b) Grant this plaintiff Summary Judgment.
(c) Impose Sanctions on the Defendants to prevent further abuse.
(d) Court costs.
(e) Any other relief that this Court may deem just and proper.

June 21, 2017

Respectfully Submitted,

Ted Martin

Ted Martin

359 Woodbridge

Des Plaines, IL 60016

Phone: (847) 824-6528

Fax: (847) 824-6533

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that on June 21, 2017, I provided service to the Defendants by causing two true and correct copies of this APPELLANT'S BRIEF to be served by US mail to:

Goldberg Kohn Ltd.
Marsha K. Hoover
55 E. Monroe Street, Suite 3300
Chicago, IL 60603-5792

By: Ted Martin
Ted Martin

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHANNES T. MARTIN,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WENDY'S INTERNATIONAL, INC., and GUINNESS WORLD RECORDS LIMITED,**<br><br>**Defendants.** | ) | **No. 15 C 6998**<br><br>**Judge Jorge L. Alonso** |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Johannes "Ted" Martin claims that defendants Wendy's International, Inc. ("Wendy's") and Guinness World Records Limited ("Guinness") violated Section 43(a) of the Lanham Act and his right of publicity under Illinois law by using his identity in a 2013 promotion. Defendants have jointly moved to dismiss plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is granted.

**BACKGROUND**

In an earlier order in this case, the Court related the facts underlying this dispute as follows:

> [P]laintiff holds the world record for consecutive kicks of a footbag. A footbag is a popular toy also known by a common brand name, Hacky Sack. In June of 1997, plaintiff set the world record by kicking a footbag into the air 63,326 consecutive times without letting it hit the ground. (Compl. at 1-2.)
>
> Over a six-week period in August and September 2013, Wendy's and Guinness ran a promotion in which every Kid's Meal sold at Wendy's restaurants included one of six Guinness-themed toys. (*Id.* at 3-4, Ex. A.) According to an announcement posted on the Guinness website, which plaintiff printed and attached to his complaint, Guinness "teamed up with Wendy's" "to add a little friendly record-breaking competition to family dining" by offering "record-breaking toys," including a trick footbag ("Once the neighborhood gets a hold of

> the skills on this footbag, it's only a matter of time before the record of 946 people playing in a circle at once gets taken down.") (*Id.*, Ex. A.) The announcement stated that "each toy provides fun challenges and a chance for parents and kids to outdo each other for the title of family's best. Tallest, smallest, fastest, farthest—each Kid's Meal will allow parents and kids to keep the fun going!" (*Id.*) Further, it stated that each Wendy's Kid's Meal would come with a link to a downloadable eBook, which provided "an exclusive guide to records that families can try to break, so mom or dad or brother or sister can set the family record. It's also packed with many fantastic records that can be broken in just a minute . . . ." (*Id.*)
>
> The words "Guinness World Records" were written on the footbag toys and on their packaging. (*Id.*, Exs. B, D.) Other printed materials related to the promotion, including an in-store display and the bag in which the Kid's Meals were sold, bore the Guinness World Records logo just beneath the heading, "Kids vs. Parents." (*Id.*, Exs. B-D.) The text on both sides of the Kid's Meal bag referred to the promotion's six "record-breaking toys." (*Id.*, Ex. C.) An instructional card included with the trick footbag toy showed a picture of two people playing footbag (plaintiff concedes that he is not pictured) and listed three records below the picture:
>
> 1. The most kicks of a footbag in five minutes is 1,019.
> 2. The most people playing footbag in a circle at one time is 946.
> 3. The most consecutive footbag kicks in 10 minutes by a pair is 1,415.
>
> (*Id.*, Ex. E.) Directly under the heading, "Instructions," the card read as follows: "How many times in a row can you kick this footbag without it hitting the ground? Back in 1997, Ted Martin made his world record of 63,326 kicks in a little less than nine hours!" (*Id.*) The card then went on to provide instructions on how to use the footbag. (*Id.*) It concludes with the question, "What kind of family record can you set?" (*Id.*)

(Mem. Op. & Order, at 1-3, May 2, 2016, ECF No. 26, *available at Martin v. Wendy's Int'l, Inc.*, 183 F. Supp. 3d 925, 927-28 (N.D. Ill. 2016) (the "May 2, 2016 Order")). According to plaintiff, defendants violated his rights under the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10, and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by printing "Guinness World Records" on each footbag, using the term "record-breaking toys" in promotional materials, and referring to plaintiff by name in conjunction with his consecutive-footbag-kicks world record on the instruction card included with each footbag.

Defendants moved to dismiss for failure to state a claim. In its May 2, 2016 Order, the Court granted defendants' motion and gave plaintiff leave to amend within 21 days. Plaintiff has filed an amended complaint based on essentially the same factual allegations. Defendants again move to dismiss.

**ANALYSIS**

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted).[1]

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action,

[1] Some courts hold that a plaintiff bringing claims under Section 43(a) of the Lanham Act must also comply with Rule 9(b), which requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Because plaintiff's claims are based on specifically identified statements, it is clear that plaintiff meets the 9(b) standard.

supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

Initially, the Court notes that plaintiff's amended complaint is improper because, rather than clearly and completely reciting the factual allegations underlying plaintiff's claims against defendants, it primarily focuses on arguing that the Court should reverse its earlier decision. But when this Court gave plaintiff leave to file an amended complaint, it was not inviting him to file a motion to reconsider its dismissal of his original complaint. An amended complaint must stand on its own by incorporating all of the plaintiff's factual allegations and any exhibits supporting them, without reference to prior pleadings, because "an amended complaint supersedes an original complaint and renders the original complaint void." *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). Plaintiff omits critical facts from the amended complaint, apparently under the mistaken belief that he need not re-allege them. Nevertheless, plaintiff is entitled to leeway as a *pro se* plaintiff, so for purposes of defendants' motion to dismiss, the Court will treat his filing as if it contains all the allegations and exhibits of the original complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed.") (internal quotation marks omitted); Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

In their motion to dismiss the amended complaint, defendants argue that despite the opportunity to amend, plaintiff fails to allege any additional facts, and therefore the claims in the amended complaint fail for the same reasons the claims failed in the original complaint. Additionally, defendants argue, as they argued in their original motion to dismiss, that the First Amendment provides a complete defense to all of plaintiff's claims.

## I. IRPA

The Illinois Right of Publicity Act grants to each individual the "right to control and to choose whether and how to use [his or her] identity for commercial purposes," 765 ILCS 1075/10, by prohibiting the "use [of] an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent," 765 ILCS 1075/30.

In its May 2, 2016 Order, this Court held that plaintiff's IRPA claim is time-barred because the one-year statute of limitations applicable to "[a]ctions for slander, libel or for publication of matter violating the right of privacy," 735 ILCS 5/13-201, also applies to IRPA claims such as plaintiff's, and plaintiff did not plausibly allege that defendants fraudulently concealed his claim from him. The Court did not reach the substantive issue of whether plaintiff stated a claim for a violation of IRPA. None of the factual allegations or assertions in plaintiff's amended complaint or response brief changes the Court's analysis of the statute of limitations; plaintiff has simply argued that this Court should reverse itself, without providing any new facts on which the Court might base a different conclusion.

However, since this Court issued its May 2, 2016 Order, the Seventh Circuit has taken pains to point out (albeit in an unpublished opinion) that it considers it an open question whether IRPA claims are subject to the one-year statute of limitations set forth in 735 ILCS 5/13-201 or to the five-year statute of limitations applicable to claims for "an injury done to property" and "all civil actions not otherwise provided for," 735 ILCS 5/13-205. *See Martin v. Living Essentials, LLC*, 653 F. App'x 482, 485-86 (7th Cir. 2016). Neither the Seventh Circuit nor the Illinois Supreme Court has directly addressed the issue. *Id.* The Seventh Circuit has twice sidestepped it, in each case explaining that it need not address the issue because, even assuming

that the plaintiff had timely filed his complaint, he was unable to state a claim under IRPA. *See id.*, *Berry v. Ford Models, Inc.*, 525 F. App'x 451, 454 (7th Cir. 2013).

In view of the note of caution that the Seventh Circuit sounded in *Martin v. Living Essentials, LLC*, the Court pauses to reconsider the issue. This Court based its prior decision in large part on *Blair v. Nevada Landing Partnership*, 859 N.E.2d 1188, 1195-96 (Ill. App. Ct. 2006), the only published decision by an Illinois state court to address the matter of the applicable statute of limitations under IRPA. In *Blair*, the Illinois Appellate Court concluded that the one-year statute of limitations applies to IRPA claims because, when IRPA became effective on January 1, 1999, it "completely supplanted the common-law tort of appropriation of likeness," one of the four invasion of privacy torts recognized by Illinois law. *See id.* at 1192; *see also Trannel v. Prairie Ridge Media, Inc.*, 987 N.E.2d 923, 928-29 (Ill. App. Ct. 2013) (tracing the history of the appropriation of likeness tort and IRPA). The one-year statute of limitations provided by 735 ILCS 5/13-201 applies to "[a]ctions for . . . publication of matter violating the right of privacy," which included actions for appropriation of likeness under the common law, as well as actions for the other common law invasion of privacy torts involving wrongful publication. *See Benitez v. KFC Nat'l Mgmt. Co.*, 714 N.E.2d 1002, 1007 (Ill. App. Ct. 1999) (735 ILCS 5/13-201 applied to actions for (1) public disclosure of private facts, (2) *appropriation of likeness*, and (3) false-light publicity).

In analyzing whether the same statute provides the applicable statute of limitations to IRPA claims, the appellate court in *Blair* cited the language of IRPA, which explains that "[t]he rights and remedies provided for in this Act are meant to supplant those available under the common law," particularly with respect to "the common law right of publicity," 765 ILCS 1075/60, the right that was the basis for the tort of appropriation of likeness. *See Blair*, 859

N.E.2d at 1191-92 ("The tort of appropriation of one's likeness is sometimes referred to as 'the right of publicity.'") The court recognized that the statutory tort is composed of the same three elements as the common law tort it replaced. *Id.* Further, IRPA provides that "[e]xcept for the common law right of publicity, the rights and remedies provided under [IRPA] are *supplemental* to any other rights and remedies provided by law including, but not limited to, the common law right of privacy." *Id.* (citing 765 ILCS 1075/60) (emphasis added). Based on this textual evidence that IRPA's aim was to codify the common law right of publicity tort (or appropriation of likeness tort) and generally to "supplement" the common law rather than substantially alter it, the court concluded that the same statute of limitations should apply to the right of publicity tort both before and after its codification.

The Court is as persuaded by this reasoning as it was in its original ruling, and it sees no reason to deviate from that ruling now. Nevertheless, as a precaution, the Court will go on to consider whether, assuming that plaintiff's claim is timely, plaintiff states a claim under IRPA. Defendants argue that (1) plaintiff fails to state a claim because his identity was not used for a "commercial purpose," as the statute requires, and (2) even if it was, defendants' use of plaintiff's identity falls within the range of conduct excluded from IRPA under 735 ILCS 1075/35(b).

Defendants' first argument is easily rejected. "Commercial purpose" is defined as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." 765 ILCS 1075/5; *see Trannel*, 987 N.E.2d at 929-30 (defining "public use" as use directed to the "community at large," and "holding out" as "representing"). It is clear that defendants

publicly used or held out plaintiff's identity for a promotional purpose by using his name in their promotion, which meets the second prong of the "commercial purpose" definition.

Defendants also argue that at least one of the IRPA exemptions is applicable in this case. IRPA explicitly does not apply to the following:

> (1) use of an individual's identity in an attempt to portray, describe, or impersonate that individual in [an artistic work];
> (2) use of an individual's identity for non-commercial purposes, including any news, public affairs, or sports broadcast or account, or any political campaign;
> (3) *use of an individual's name in truthfully identifying the person as the author of a particular work or program or the performer in a particular performance*;
> (4) promotional materials, advertisements, or commercial announcements for a use described under paragraph (1), (2), or (3) of this subsection; or
> (5) use of photographs, videotapes, and images [as] specimens of [a] professional photographer's work . . . .

765 ILCS 1075/35(b) (emphasis added). Defendants argue that the third exemption applies here because defendants merely identified plaintiff as the person who once kicked a footbag 63,326 consecutive times; therefore, they "truthfully identif[ied]" plaintiff as "the author of a particular work or program or the performer in a particular performance." The Court agrees with defendants that their reference to plaintiff falls within this exemption. *See Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 825-26 (N.D. Ill. 2016), *aff'd*, 845 F.3d 802 (7th Cir. 2017) (applying 765 ILCS 1075/35(b)(3) where plaintiff claimed that online bookseller violated his right of publicity merely by listing his books for sale without his permission); *cf. Trudeau v. Lanoue*, No. 04 C 7165, 2006 WL 516579, at *1, 6 (N.D. Ill. Mar. 2, 2006) (finding 765 ILCS 1075/35(b)(3) inapplicable because defendants used a picture of plaintiff, in addition to his name, to "artfully" deploy his identity to "give the false impression . . . that the consumer was in effect buying Defendants' products from [plaintiff]"). Defendants did nothing but truthfully identify plaintiff as the holder of one of the world records reported by Guinness, as an example of one of the records it reports. Plaintiff does not challenge Guinness's right to list his record in its book, and

it would be nonsensical to hold that the law prohibits Guinness from reciting that bare fact in a promotional item but permits it to include the fact in the books it sells. Plaintiff fails to state a claim for violation of his right of publicity under IRPA.

## II. LANHAM ACT SECTION 43(a)

Section 43(a) provides as follows:

> **(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). Thus, there are two bases for liability: false association or endorsement, under subsection (A); and false representations in advertising, under subsection (B). *Tecnomatic, S.p.A. v. Remy, Inc.*, No. 1:11-CV-00991-SEB, 2012 WL 2376066, at *15 (S.D. Ind. June 22, 2012) (citing *L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.*, 9 F.3d 561, 575 (7th Cir. 1993), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014)).

Plaintiff's amended complaint and response brief include virtually no additional facts that might be relevant to his Lanham Act claims, so for the most part, there is no reason for the Court to revisit its earlier analysis of these issues. The only new fact that is arguably material to plaintiff's claims is his assertion that he has business associates in Montreal, Canada, who told him, "We thought you had something to do with it," *i.e.*, they believed that plaintiff was directly

involved in defendants' footbag promotion. Plaintiff argues that this fact supports his false endorsement claim.

But to state a claim for false endorsement under the Lanham Act, plaintiff must show that the terms defendants used and the representations they made in the 2013 promotion likely caused consumers to believe that plaintiff endorsed defendants' products. *See* 15 U.S.C. § 1125(a)(1)(A); *Woodard v. Victory Records, Inc.*, No. 11 C 7594, 2016 WL 1270423, at *9 (N.D. Ill. Mar. 31, 2016) (citing *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 522 (7th Cir. 2014)); *see also Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1020 (3d Cir. 2008), *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007-08 (9th Cir. 2001)). The inquiry must focus on confusion by the customer. *See Bd. of Regents of Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 455 (7th Cir. 2011).

Regardless of plaintiff's anecdotal account of what his business associates in Montreal might think, the Court remains unconvinced that plaintiff has plausibly alleged that ordinary consumers are likely to believe, based only on the fact that defendants mentioned plaintiff's record in the course of their promotional distribution of free footbags, that plaintiff endorsed the footbags. It is clear in the context of the promotion that mentioning plaintiff's record on the instructional card served only to offer a sample of the sort of world records Guinness publishes—and plaintiff does not claim that Guinness does not have the right to publish the record in its books. Plaintiff insists that merely by mentioning him in their promotion, defendants implied that he endorsed the free footbags they were distributing, but the promotion makes no explicit or implicit connection between plaintiff and those particular footbags. Indeed, it makes no meaningful representations at all about the quality of the footbags; the promotion merely represents that footbags can be used to set records.

Plaintiff vigorously argues that this case is identical to *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 412-13 (9th Cir. 1996), but as this Court suggested in its earlier ruling, *Abdul-Jabbar* is critically distinguishable. In that case, defendant General Motors Corporation ("GMC") used plaintiff Kareem Abdul-Jabbar's birth name "Lew Alcindor" in a car commercial:

> This dispute concerns a GMC television commercial aired during the 1993 NCAA men's basketball tournament. The record includes a videotape of the spot, which plays as follows: A disembodied voice asks, "How 'bout some trivia?" This question is followed by the appearance of a screen bearing the printed words, "You're Talking to the Champ." The voice then asks, "Who holds the record for being voted the most outstanding player of this tournament?" In the screen appear the printed words, "Lew Alcindor, UCLA, '67, '68, '69." Next, the voice asks, "Has any car made the 'Consumer Digest's Best Buy' list more than once? [and responds:] The Oldsmobile Eighty–Eight has." A seven-second film clip of the automobile, with its price, follows. During the clip, the voice says, "In fact, it's made that list three years in a row. And now you can get this Eighty–Eight special edition for just $18,995." At the end of the clip, a message appears in print on the screen: "A Definite First Round Pick," accompanied by the voice saying, "it's your money." A final printed message appears: "Demand Better, 88 by Oldsmobile."

*Id.* at 409. GMC argued that plaintiff's Lanham Act claim could not be premised on the mere mention of the bare fact that he held the record for most times voted most outstanding player of the NCAA tournament. The Ninth Circuit disagreed:

> [U]se of celebrity endorsements in television commercials is so well established by commercial custom that a jury might find an implied endorsement in [GMC's] use of the celebrity's name in a commercial . . . . Many people may assume that when a celebrity's name is used in a television commercial, the celebrity endorses the product advertised. . . .
>
> Had GMC limited itself to the "trivia" portion of its ad, GMC could likely defend the reference to Lew Alcindor as a nominative fair use. *But by using Alcindor's record to make a claim for its car*—like the basketball star, the Olds 88 won an "award" three years in a row, and like the star, the car is a "champ" and a "first round pick"—GMC has arguably attempted to "appropriate the cachet of one product for another," if not also to "capitalize on consumer confusion."

*Id.* at 413 (emphasis added) (quoting *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992)). This case is plainly different. First, unlike a television commercial,

an instruction card included with a free promotional toy is not a context in which consumers are accustomed to seeing celebrity endorsements. Second, and more importantly, defendants did not use plaintiff's record to "make a claim for" its footbags. As the Court explained in its initial ruling, mentioning the record served at most as "an illustrative example" (May 2, 2016 Order, at 18) of what to do with a footbag; it had nothing to do with the qualities of the footbag. The Court still fails to see how this suggests endorsement of the footbags or indeed "implicate[s] the source-identification purpose of trademark protection" at all. *See Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d 1212, 1216 (C.D. Cal. 2000). The Court adheres to its prior conclusion that plaintiff does not state a claim for false endorsement under the Lanham Act.[2]

Because plaintiff fails to state a claim, his complaint will be dismissed. The Court previously gave plaintiff a chance to replead because it was unclear whether he might be able to make additional factual allegations about defendants' footbag promotion. But plaintiff fails to state a claim in the amended complaint, and he has not meaningfully added to the factual allegations he had already made. Because repleading again will not alter the promotional materials on which plaintiff attempts to base his claims and there are apparently no other

---

[2] As they did in their initial motion to dismiss, defendants contend that the First Amendment provides a complete defense to plaintiff's claims. The Court need not address this contention because, as the foregoing discussion demonstrates, plaintiff fails to state a claim under IRPA or the Lanham Act, and the Court should "avoid unnecessary constitutional adjudication." *See Eastland Music Grp., LLC v. Lionsgate Entm't, Inc.*, 707 F.3d 869, 871 (7th Cir. 2013). Parenthetically, however, the Court notes that defendants' First Amendment argument is suspect. The Seventh Circuit held in *Jordan*, 743 F.3d at 520, that even "image advertising" that does not directly promote a particular product is commercial speech not entitled to full First Amendment protection, and it is unclear whether there is any meaningful distinction between the advertising in that case and defendants' promotional activity in this case. Further, the case on which defendants principally rely, *Brown v. Electronic Arts, Inc.*, 724 F.3d 1235, 1248 (9th Cir. 2013), concerns the *Rogers v. Grimaldi*, 875 U.S. 994, 999 (1989), test for whether a challenged use of a trademark plaintiff's identity that occurs in the context of an expressive work is entitled to First Amendment protection. But it is not clear that the promotion plaintiff challenges in this case should be characterized as an "expressive work." *See Facenda*, 542 F.3d at 1015-18 (concluding that promotional film analogous to an infomercial was not an expressive work entitled to more robust First Amendment protection).

material facts that might cast the promotion in a different light, the dismissal will be with prejudice.

## CONCLUSION

For the reasons set forth above, the Court grants defendants' motion to dismiss [28] with prejudice. Civil case terminated.

**SO ORDERED.**

**ENTERED:** April 28, 2017

**HON. JORGE L. ALONSO**
**United States District Judge**

**IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF ILLINOIS**

Johannes T. Martin,

Plaintiff(s),

v.

Wendy's International Inc.et al.,

Defendant(s).

Case No. 15 C 6998
Judge Jorge L. Alonso

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐ in favor of plaintiff(s)
and against defendant(s)
in the amount of $ ,

which ☐ includes pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☐ in favor of defendant(s)
and against plaintiff(s)

Defendant(s) shall recover costs from plaintiff(s).

---

☒ other: This case is dismissed with prejudice.

---

This action was *(check one)*:

☐ tried by a jury with Judge Jorge L. Alonso presiding, and the jury has rendered a verdict.
☐ tried by Judge Jorge L. Alonso without a jury and the above decision was reached.
☒ decided by Judge Jorge L. Alonso on a motion to dismiss.

Date: 4/28/2017

Thomas G. Bruton, Clerk of Court

Nicole Fratto , Deputy Clerk